7 | 823
121 | 484

# McGOWAN, ET AL. v. THE BRANCH BANK AT MOBILE.

1. The rule of practice, which directs that all orders of publication, shall succinctly state the facts and objects of the bill, is of the same nature as the statute regulation requiring a copy of the bill to be served with the *subpœna;* but a mistake or even the entire omission to comply with the rule, is not available on error.

2. A discrepancy between the time at which the complainant prays the defendant may answer the bill, and that named in the order of publication is no error; the time in the prayer is immaterial, and in the publication, only so, as informing the defendant when he must answer.

3. Where the decree is founded on the masters's report, ascertaining debts to be due not covered by the bill, and entirely omitting those which are, it is error, although no exception was taken to the report, for on the face of the decree it is shown to be wholly disconnected from the case made by the bill.

4. When the allegations of a bill leave it uncertain whether a mortgage, sought to be foreclosed, was executed by two of the defendants or by one of them only, and the evidence in the cause does not remove the uncertainty, the objection is available on error, although no demurrer for this cause is interposed : but a reversal for such a cause carries no costs.

5. A power of sale given by the mortgage, does not divest a Court of equity of jurisdiction to decree a sale.

6. Where two mortgages are executed by different mortgagors, to secure the *same debt,* both may be foreclosed in the same suit.

Writ of error to the Court of Chancery for the first district, southern division.

BILL to foreclose, by the Bank against E. O. McGowan, Champ Taylor and Cynthia, his wife.

It alledges that Taylor, and McGowan, on the 27th May, 1840, were indebted to the complainant, $12,736 70, to be paid as afterwards stated; that the better to secure the same, on that day they executed their certain deed of mortgage, which the party asserted a readiness to produce to the Court, as it might direct. After setting out the description of the estate conveyed by the mortgage deed, the bill proceeds thus: " The above property, contained in the mortgage of E. O. McGowan

to the Bank, as aforesaid, and the following real estate, mortgaged to secure the same debt, as aforesaid, by E. O. McGowan, Champ Taylor and Cynthia Taylor." After this is a description of other real estate, and then the bill proceeds thus: "Which indenture of mortgage is subject to the condition, that if the said parties, or either of them, shall pay to the complainant, $12,736 70, due by four promissory notes, made by C. Taylor and indorsed by E. O. McGowan, all dated 25th May, 1840 : the first at twelve months, for $2,733 39; the second at two years, for $2,994 01; the third at three years, for $3,309 68; and the fourth at four years, for $3,697 62, then," &c.

The bill alledges the non-payment of the notes, although long since due, and concludes with the usual prayer, and for a *subpœna* to all the mortgagors. It was filed 25th October, 1842. In the transcript is found copies of two mortgages, both purporting to have been executed the 27th May, 1840, one by McGowan, conveying the real estate first described in the bill; and the other by McGowan and Champ Taylor, and also by Cynthia, the wife of the latter, conveying the real estate last described in the bill. There is nothing to indicate that these copies were appended to the bill as exhibits or otherwise.

Service, as to Taylor and wife, was by *subpœna*, but was by publication as to McGowan, he being absent from the State. In the published order but one mortgage is named, and that is stated as executed by McGowan and Taylor, and McGowan is required to answer the bill by the first February, 1843.

At April term, 1843, a decretal order appears, overruling a motion to dismiss the bill for want of equity, on the ground, that the mortgages contain powers of sale. The bill was then also taken *pro confesso* against all the defendants. The entry recites, that the original mortgage and notes being produced, and proved in open Court, they were referred to the master, with the bill, to ascertain the amount due and owing to the complainant. The master reported, that he found due, on the 20th June, 1839, one note for $1,624 51; and on the 20th June, 1840, one note for $1,738 51, with interest on the same from the times they severally fell due. This report was affirmed, on the complainant's motion, and a decree founded on it was entered. The confirmation of this report, and the decree on

it, was set aside during the same term, and the cause seems to have stood continued.

At the April term, 1844, the report was again confirmed, and a decree made, that unless the sum reported to be due, was paid into Court by the first of May, the mortgaged premises should be sold.

The defendants to the bill prosecute the writ of error, and assign many reasons why the decree should be reversed. They are omitted here, because most of them are covered by the points made in argument.

STEWART, for the plaintiffs in error, submitted a brief presenting these points:

1. The bill is uncertain, indefinite, and contradictory. [Hartwell v. Wilkins, 6 Ala. Rep. 581; Whitaker v. DeGraffenreid, Ib. 303; 1 Bibb, 114 ]

2. Two mortgages cannot be joined in one suit, nor the remedies against divers defendants blended in one decree. [Mitford, 239, No. 181; Story Eq. Plead. 224; 5 Paige, 65, 78, 79; Hopk. C. 234.]

3. The *pro confesso* decree is irregular, as it was taken under a defective publication. The 17th rule, Clay's Digest, 614, directs, that the facts and objects of the bill, shall be succinctly stated in the publication; and the 40th rule, (Ib. 616, § 40,) prescribes the time of, and manner of perfecting the service. Here the publication describes one mortgage only, and that as executed by McGowan and Taylor, which corresponds to neither of those set out in the bill. The time fixed by the order for the appearance of the defendant, is different from the prayer of the bill.

4. The report o the master, and consequently the decree, is unwarranted, as it contains debts not set out in the bill; and uncertain, as only one mortgage was referred or reported upon, and it is not stated which. [4 Porter, 246; 4 Litt. 258.]

5. The restitution bond is defective, for reciting only one mortgage as foreclosed.

6. The mortgage contains a power of sale, and therefore there was no reason for a sale under a decree.

7. The decree is that the whole land shall be sold. It may be that a portion of it will pay the debt, and therefore the

104

decree should have been so limited. The interest of Cynthia Taylor ought to have been reserved, until that of the other mortgagors was sold. [2 Paige, 301.]

No counsel appeared for the defendant in error.

GOLDTHWAITE, J.—1. We propose to consider the errors assigned here, in the order in which they are supposed to have occurred, in the course of the proceedings.

The objection to the publication, under which one of the defendants was before the Court, is, that one mortgage only is stated as the substance of the bill, and even that is improperly described. The 17th rule is of the same nature as the statute regulation, directing a copy of the bill to be served with the *subpœna*, (Clay's Digest, 351, § 34.) Both were intended to advise the defendant, of the description of the suit against him, but a mistake in the copy, or brief of the bill, or even its entire omission, does not give him a right to reverse a decree otherwise free from error, if the service, or publication, is in other respects in accordance with the statute. This is in direct analogy to civil causes, in which the omission to leave with the defendant a copy of the writ, is no cause for abating the suit, though such a copy is directed by statute.

2. Another objection to the publication is, that it requires the defendant to appear and answer the bill on the 1st of February, when the prayer of the bill is, that he shall answer at the next term of the Court; which term did not commence until after the day named. We are unable to comprehend the force of this objection, if it has any, and consider the time in the prayer as wholly immaterial; and that in the publication, only so, as informing the defendant when he must answer. Certainly he is not prejudiced, if the day named is a proper one, and no *pro confesso*, is taken until it has passed. The objection does not go to the time stated, but to the discrepancy between the prayer of the bill and the publication, and this we consider as presenting no available error.

3. There is, however, a fatal objection to the decree, without reference to the form of the bill. It refers to, and is founded entirely on, the master's report. That ascertains debts to be due, which are not covered by the bill, and those which are so covered, are entirely omitted. The consequence is, that a

decree is rendered, which, on its face, appears to be wholly disconnected from the case made by the complainant.

It generally is true, where a party to a bill is required to be present, when an account is stated, and he omits to except to it at the proper time, he will be concluded from afterwards raising objections to it. [Levert v. Redwood, 9 Porter, 79.] But this rule is inapplicable, when the report is solely upon matters not included in the reference, nor covered by the pleadings. [Levert v. Redwood, 9 Porter, 79 ; Adams v. Claxton, 6 Vesey, 226; Brodie v. Barry, 1 J. & W. 470.] By a reference to the bill, and to the report, it will be seen that the notes described in the one, are not the same, nor indeed, have any resemblance to those set out in the other.

4. The other errors insisted on arise, as is contended, out of the bill itself, and the first we shall notice, is as to its uncertainty. It is very justly considered, that many objections to a bill which would be fatal if taken on demurrer, are of no weight whatever, if made for the first time in an appellate tribunal; and the English rule is, that points not raised in the Court below, cannot be argued in the House of Lords. [McDonald v. McDonald, 1 Dow, 463.] The reason is, that the defect in the Court below, may be cured by an amendment, which cannot be done in the other Court. Another reason, too, not without its force, in most cases, is, that generally speaking, the evidence in the cause, enables the Court to see, to which of the repugnant, or uncertain allegations, the relief should be applied. It is evident, when the bill is taken for confessed, that the case is no more certain than it was before, unless the course of practice compels the complainant, in such a condition of the suit, to support his allegations by proof. In this case the uncertainty is, whether the mortgage first described in the bill was executed by McGowan alone, or by him and his co-defendant, Taylor. Now, when it is said the mortgage and the notes described in the bill, were produced and proved, we are not a point nearer certainty, than we would be without them, as we still do not know, whether it was executed by one or by both. Although we are strongly disinclined to sustain an objection of this nature, at this stage of a cause, it seems to fall within the rule recognized in the previous decisions. [Hartwell v. Wilkins, 6 Ala. Rep. 581.]

It is, perhaps, unnecessary to remark, that the reversal for an error like this would carry no costs.

5. There is nothing in the power of sale given by this mortgage, which deprives a Court of Equity of its jurisdiction. The circumstance, that, when the power is conferred on the mortgagee, he, as trustee, may be incapable of becoming a purchaser, is almost conclusive, as a reason, why the jurisdiction should be preserved, as from this, it is certain, the remedy under the power is not so full and ample as it is by a decree. All the authorities concur, that the jurisdiction of equity exists, as wel where there is a power to sell, as where there is none.

6. The only other objection we shall consider, is more general in its character. It is asserted, that inasmuch as there are different mortgagors to the two deeds of mortgage, they cannot be joined in the same suit, but that a separate bill, for the foreclosure of each is necessary. This proposition may be true when the debts, as well as the mortgages, are distinct; but here they are for the same debt, and therefore there is no pretence for several suits. Indeed, it may be questionable whether these defendants are not necessary parties, in a suit to foreclose either mortgage. How otherwise, if questions as to priority, or contribution, should arise, are they to be determined? But, independent of these questions, with which the complainant has no concern, in the first instance, there is no reason why he should be forced to pursue two suits, when one is sufficient, and no more, to enable him to obtain his rights. We think there is nothing in this objection.

7. The complainant, as before observed, has nothing to do in the first instance, either with the apportionment of his debt between the several mortgagors, or in the marshaling of the sale of the mortgaged estate. By the contracts, all of it is liable to the satisfaction of the debt, and if there is any reason, why one portion of the property should be sold sooner than another, it was for the defendants to disclose it. The apparent relation between them, as maker, and indorser, may not exist, or may be countervailed by some agreement. The Court of Chancery was not obliged so to shape its decree, as to produce effects which, when produced, might not have been accordant either with the wishes, or the contracts of the parties.

On the whole, we think there are no errors in the cause, oth-

er than those we have ascertained. As to those questions not examined, we have declined to express any opinion, for it is scarcely possible they can arise again in the suit.

The decree is reversed and the cause remanded, that the bill may be amended or dismissed.